732 P.2d 346
**STATE of Idaho,
Plaintiff-Appellant-Cross
Respondent,**

v.

**Kip Martin YEATES,
Defendant-Respondent-Cross
Appellant.**

No. 16111.

Court of Appeals of Idaho.

Jan. 28, 1987.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael A. Henderson, Deputy Atty. Gen., for plaintiff-appellant-cross respondent.

Ronald J. Jarman, Pocatello, for defendant-respondent-cross appellant.

SWANSTROM, Judge.

The state brings this interlocutory appeal to challenge the suppression of statements made by Kip Martin Yeates to officers in his home while they waited for a search warrant to arrive. Yeates cross appeals the denial of his motion to suppress the physical evidence found in his home. For the reasons that follow, we affirm in part, vacate in part and remand the case for trial.

In March 1985 undercover Officer Steven Van Vliet arranged to purchase ten pounds of marijuana from Paul Lineberry. The two met at a parking lot in Pocatello where Lineberry delivered a half-pound sample. Van Vliet then gave Lineberry $1,000 of recorded currency to secure the remaining nine and one-half pounds. It was agreed that Van Vliet would follow Lineberry to the supplier's house and wait nearby. Van Vliet did so and observed Lineberry meet two men outside a mobile home. The three men went inside and in a few minutes came back out. Lineberry carried a green trash bag to his vehicle. He drove off to meet Van Vliet. The other two men, one of whom was later identified as Yeates, drove off in another vehicle. Lineberry and Van Vliet again met in the parking lot where the final exchange of money and drugs was to be made. Lineberry was arrested. He and his automobile were searched. He told the officers that he had given the money to Yeates, the supplier, in the mobile home.

The officers then began the process of obtaining a warrant to search the home which they learned was Yeates' residence. At the same time, officers of the Department of Law Enforcement set up surveillance of the home. After roughly half an hour, a man and a woman emerged from the home and started to leave in an automobile. Fearing the disappearance of evidence, particularly the $1,000 buy money, the officers moved in. The two persons were handcuffed, searched for weapons, and taken back inside. Another woman met the officers at the door but there is no contention made by the state that the officers' entry into the home was with consent. The officers conducted a security check to determine whether any other persons were present. They secured the premises to maintain the status quo until the arrival of a warrant authorizing them to conduct a search.

Before the warrant arrived, Yeates returned to the home. After being given Miranda warnings he was questioned and made incriminating statements including where the buy money and additional marijuana could be found. Subsequently, after the home had been "secured" for approximately two hours, the search warrant arrived. The officers then located the buy money and marijuana where Yeates said it would be and searched the home for additional evidence. The officers also obtained

statements from another person in the home, Darren Hill.

Yeates was charged with one count of delivery of a controlled substance and one count of possession of a controlled substance with intent to deliver. He moved to suppress all the evidence obtained as a result of the warrantless entry and securing of his home. The district court, ruling that the officers had entered the home illegally, granted the motion. Then, on its own initiative, the court ordered further argument on the motion in light of *State v. Hoak*, 107 Idaho 742, 692 P.2d 1174 (1984). Based on the *Hoak* decision, which was not addressed at the first hearing, the court changed its ruling and decided the physical evidence seized pursuant to the search warrant was admissible. Yeates then filed a motion in limine to prohibit the use of his statements. The state appeals from the order granting this motion. Yeates cross appeals from the order denying suppression of evidence seized pursuant to the search warrant.

■ We must first decide whether this appeal is properly before us. An order granting a motion to suppress is appealable under I.A.R. 11(c)(4). As noted, Yeates' motion was styled as a motion in limine. The state argued below, as it does here, that the motion was in fact a suppression motion. We agree. The basis for Yeates' motion was that the statements were extracted by the officers in violation of Yeates' constitutional rights. The thrust of the motion was to invoke the exclusionary rule to suppress otherwise admissible evidence. It was properly regarded as a suppression motion.

■ Having determined that the suppression order is appealable, we next address the question of whether the trial court erred by considering the motion. The state argues that the motion was untimely and should not have been considered. A motion to suppress illegally obtained evidence pursuant to I.C.R. 12(b)(3) must be filed within fourteen days after the entry of a not guilty plea or seven days before trial, whichever is earlier.

I.C.R. 12(d). The rule also sets time limits for a hearing on the motion. The district judge did not indicate whether he considered the motion as a motion to suppress, subject to Rule 12, or as a motion in limine. He did state however that the motion was timely. Yeates had initially moved to suppress "any evidence the State would seek to introduce ... pursuant to [the] search...." This is broad enough to cover statements obtained from persons detained during the search. The motion in limine later sought to clarify the judge's ruling concerning those statements. It relates back to the motion to suppress, the timeliness of which is not challenged. In considering the motion, the district judge clarified the scope of his prior order. We hold that the district judge did not abuse his discretion by considering the motion.

■ The state next asserts that the motion to suppress the statements was wrongly decided. The resolution of this issue, and of Yeates' cross appeal, begins with a determination of the legality of the officers' actions in securing the residence. The state submits that the warrantless securing of Yeates' mobile home was justified by exigent circumstances. Our standard of review of this claim is "one of deference to factual findings unless they are clearly erroneous, but free review of a trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Rusho*, 110 Idaho 556, 559, 716 P.2d 1328, 1331 (Ct.App.1986). For reasons we will now discuss, we hold that the securing of Yeates' residence was illegal and that Yeates' statements were tainted by that illegality.

■ The warrantless securing of a residence comes within the purview of the fourth amendment and is presumptively unreasonable. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Edwards*, 602 F.2d 458 (1st Cir.1979). However, if officers have probable cause to search the residence and exigent circumstances are

present, a warrantless entry, for limited purposes, is permissible. *United States v. Cuaron,* 700 F.2d 582 (10th Cir.1983). In *State v. Hoak, supra,* the Idaho Supreme Court recognized that exigent circumstances can justify a warrantless entry where there is probable cause and the officers have a reasonable belief that evidence will be destroyed unless they act. We regard *Hoak's* "reasonable belief" test as synonymous with the "exigent circumstances" test used in the federal cases.

> When police officers, acting on probable cause and in good faith, reasonably believe from the totality of circumstances that (a) evidence or contraband will imminently be destroyed or (b) the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons, exigent circumstances justify a warrantless entry, search or seizure of the premises. [Footnotes omitted.]

*United States v. Kunkler,* 679 F.2d 187, 191–92 (9th Cir.1982).

■ The state has the burden to show the existence of the exigent circumstances justifying a warrantless entry. *United States v. Cuaron, supra. Cuaron,* like *Hoak,* used a reasonable belief standard for determining when the possible destruction of evidence justifies warrantless action. In *Cuaron* the court added that "[b]y 'reason to believe' we mean just that: *reason to believe.* Mere guesswork or whim will not do." (Emphasis original.) 700 F.2d at 586 n. 4. "When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real, immediate and serious consequences if he postponed action to get a warrant." *McDonald v. United States,* 335 U.S. 451, 460, 69 S.Ct. 191, 195, 93 L.Ed. 153 (1948) (Jackson, J., concurring).

Here, the officers conducting the surveillance of Yeates' home were concerned about possible destruction of drugs and about the possible disappearance of the buy money. In order to prevent removal of evidence, they stopped the first two persons they saw leaving the residence. The commotion caused by the detention just outside the home could have alerted occupants inside. Consequently, in order to prevent destruction of evidence, the officers entered and secured the premises.

We first address the rationale of drug destruction. The state cites federal cases finding sufficient exigent circumstances based on the possible destruction of drugs.[1] In each of these cases the officers possessed specific information indicating the probability of additional drugs being located inside the residence. The officers were also aware that people were located inside the residence. The officers could also state facts known to them at the time of the warrantless action that created a reasonable belief that the drugs would be destroyed unless immediate action was taken. This combination of factors is lacking in the instant case. It is not disputed that the officers who were seeking the warrant had probable cause to believe that the buy money or additional drugs were within the mobile home. However, the officers who were stationed at the home following Lineberry's arrest presented no facts which show at the time they moved in they had any justified fear the drugs would be destroyed before the arrival of the warrant. It is true that one of the surveillance officers had earlier observed an individual peer out a window through parted curtains. However the officers seek to justify the warrantless action by the exigency created when they later detained two persons who were attempting to drive away. At this point the officers did not know if there was anyone left in the residence to destroy any remaining drugs.

A closer question is presented by the officers' fear of losing the buy money. Lineberry told the officers that he gave the money to Yeates while in the mobile home. This was confirmed, to some extent, by a search of Lineberry and his automobile at

---

1. *United State v. Hicks,* 752 F.2d 379 (9th Cir. 1985); *United States v. Elkins,* 732 F.2d 1280 (6th Cir.1984); *United States v. Cuaron, supra; United States v. Kunkler, supra.*

the time of his arrest. Thus, the officers were aware that the buy money may have been inside the residence. However, the police were also aware that Yeates, who received the buy money, and a companion had left the home prior to the initiation of surveillance. Thus, the officers knew that the money could already have been carried away. Again, once the two persons attempting to leave were detained, the officers were not aware of specific facts leading to a reasonable belief that the buy money, if still inside, would be carried away or destroyed unless immediate action was taken. Although their speculation that the residence may have been occupied and that the buy money remained inside turned out to be correct, speculation and mere guesswork are insufficient to justify warrantless action. *United States v. Cuaron, supra.* We hold that the state has not shown that the exigencies of the situation made the warrantless entry and securing imperative. *See McDonald v. United States, supra.*

On appeal the state hypothesizes that counter-surveillance measures may have been ongoing whereby the "source" or supplier, is immediately alerted of trouble by persons sent to observe the transaction or by the failure of the seller to return with the money or call the supplier. The state points to the fact that a surveillance officer observed someone look out a window before the two persons attempted to leave the mobile home. However, nothing in the record supports the notion that the officers believed that counter-surveillance was underfoot.

▮ Although we agree with the district court that the seizure of the home was illegal, that does not fully answer the suppression questions. First, we will address Yeates' cross appeal of the district court's decision to admit the physical evidence seized pursuant to the search warrant. The appellate rules do not provide for an appeal from the *denial* of a suppression motion. However, because the case is already before us on the appeal brought by the state, we will consider Yeates' cross appeal. Doing so facilitates judicial economy and a speedier resolution of these issues.

▮ When officers illegally seize a residence, but do not conduct a search for evidence until the arrival of a valid search warrant, and the warrant affidavit contains no information gained from the illegal entry, evidence obtained in the search pursuant to the warrant is admissible under the independent source doctrine. *State v. Hoak, supra. Accord, People v. Griffin,* 727 P.2d 55 (Colo.1986). The officers were in the process of obtaining the warrant at the same time the surveillance was set up. The warrant was not tainted by information obtained by the illegal seizure. Nor was the home searched until the warrant arrived. Accordingly, we uphold the ultimate decision of the district court to deny suppression of the evidence found and seized during the search pursuant to the warrant.

Next we address the state's appeal of the suppression of Yeates' statements. Yeates returned to his home after it had been secured, but before the search warrant arrived. He was taken to a back room, informed of his Miranda rights and questioned. He stated that he was aware of the reason for the presence of the officers. He told the officers where the buy money and more marijuana could be found. When asked to identify his source of drugs he indicated his desire to talk to a lawyer and the questioning stopped. After the search warrant arrived and the evidence was seized Yeates was formally arrested.

The arrest of Yeates in his home without a warrant of arrest has raised questions about the legality of that arrest. In *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court held that police officers' non-consensual entry, without an arrest warrant, into a suspect's home in order to make a routine felony arrest violated the fourth amendment. As a result the Court held that evidence in plain view upon entry, seized by the officers, had to be suppressed.

*Payton* is not exactly on point. The officers here did not go into Yeates' home for the purpose of arresting Yeates. Nevertheless, the officers made a warrantless arrest in the suspect's home, a place they were not legally entitled to be. *Payton* recognized the particular privacy interest in one's home. "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590, 100 S.Ct. at 1382.

■■■■ The exclusionary rule bars from trial evidence obtained in violation of the fourth amendment. The burden of showing that warrantless action was reasonable, or came within a recognized exception to the warrant requirement, rests with the prosecution. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The district court found that the seizure of Yeates' residence was not justified by exigent circumstances, but that, under *Hoak*, the warrant requirement had been satisfied. Thus, the physical evidence is admissible. However, the statements were not "found" pursuant to the warrant. Even though the making of statements invokes fifth amendment principles, the fourth amendment is nonetheless offended when verbal evidence is the "fruit" obtained from an illegal search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). A finding that the statements were voluntary under the fifth amendment does not dispose of the fourth amendment issue. *Brown v. Illinois, supra*. *Brown* recognized that, unlike physical evidence, a statement can be the untainted product of a free will. However, the court rejected a per se rule that a statement derived from a fourth amendment violation can be cleansed by the proper observance of a suspect's fifth amendment rights.

In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." [Citations omitted.] *Wong Sun* thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.

*Brown v. Illinois*, 422 U.S. at 602, 95 S.Ct. at 2261. The Supreme Court indicated that the determination of whether statements are the product of a free will under *Wong Sun* turns on the facts of each case and provided the following guidance:

> The Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, [citations omitted] and, particularly, the purpose and flagrancy of the official misconduct are all relevant. [Citations and footnote omitted.]

*Brown v. Illinois*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62.

■■■ Although *Brown* involved an illegal arrest, we think the analysis is appropriate to any fourth amendment violation that results in the making of incriminating statements. Thus, we do not decide whether the arrest of Yeates was illegal. Rather, our inquiry focuses upon whether the exclusionary rule requires suppression of the statements obtained from Yeates while the officers were inside Yeates' mobile home prior to the arrival of the warrant.

■■■ The first factor, voluntariness under the fifth amendment, is a threshold requirement. *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Brown v. Illinois, supra*. Yeates does not claim that his statements were involuntary and for our present review we will consider this threshold to be met.

The second factor is the temporal proximity of the statements to the illegal entry.

The state argues that this factor is the least useful and refers us to *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), where forty-five minutes separated the illegal detention and the statements of the suspect. In *Rawlings* the Supreme Court emphasized the congenial atmosphere present during the wait for a warrant. Although the temporal proximity factor is generally considered to be of little or no use in the balancing of the *Brown* factors, *State v. Reffitt*, 145 Ariz. 452, 702 P.2d 681 (1985), it is often relied upon to find that a statement is tainted. 3 W. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.4(b) (1978). Here, when Yeates arrived at his home he was verbally informed of his Miranda rights and within ten minutes was taken to a back room by two officers and questioned. The investigative atmosphere coupled with the short time between Yeates' detention and statements militate toward suppression.

Next we consider the purpose and flagrancy of the official misconduct. At first blush, this factor seems to favor admissibility. The officers did not enter the home to arrest Yeates; they knew he was not present. Their sole purpose was to preserve evidence, and though they acted prematurely, they did not act flagrantly. They did not possess sufficient information to conclude that exigent circumstances existed, but they did have enough information to obtain a search warrant. Their mistake was one of judgment and was not purposeful misconduct. "Courts have been reluctant to suppress confessions if the illegal police arrest or detention was undertaken without bad purpose and involved an arguable mistake." *State v. Reffitt*, 702 P.2d at 689. However, once the officers secured the home they continued to investigate, using the home as the base of that investigation. Statements were obtained from persons present. The investigatory actions went beyond the necessity created by the alleged exigency. Warrantless action "must be 'strictly circumscribed by the exigencies which justify its initiation,'...." *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978) (citing *Terry v. Ohio*, 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968)).

Last in our consideration of the *Brown* criteria is whether intervening circumstances operated to break the causal chain between the illegal police conduct and the statements. The state urges us to find that the existence of probable cause to arrest is such an intervening factor. Other courts have done so. *United States v. Maier*, 720 F.2d 978 (8th Cir.1983); *United States v. Manuel*, 706 F.2d 908 (9th Cir. 1983); *State v. Reffitt, supra*. We believe probable cause is an appropriate consideration in cases where the police misconduct is not flagrant. The seizure of Yeates' residence did not involve a flagrant fourth amendment violation. However, the statements resulted from questioning initiated after the perceived exigency had passed. Even though we do not regard the continued investigation an extreme disregard for the fourth amendment, it is the type of police misconduct, as is the initial entry, that can be discouraged by the application of the exclusionary rule. Assuming that the arrest was legal, it has not been shown that the existence of probable cause to arrest Yeates was sufficient to dissipate the taint of the questioning while the officers were illegally in the home. The question of the admissibility of the statements is a close one. We cannot, on the record presented, conclusively determine whether Yeates' statements were induced by the illegal entry or were "sufficiently an act of free will to purge the primary taint." *Brown v. Illinois* 422 U.S. at 602, 95 S.Ct. at 2261 (quoting *Wong Sun v. United States*, 371 U.S. at 486, 83 S.Ct. at 416). Thus, the state has not met its burden of showing the admissibility of the statements. Determinative in our analysis is the temporal proximity coupled with the fact that the officers acted beyond the perceived exigency when they questioned Yeates.

The state raises one last issue, the admissibility of statements made by Darren Hill. Hill was detained as he and a companion

385

attempted to leave Yeates' residence in an automobile. The stop was made at gun point. The two were searched for weapons, handcuffed and taken back into Yeates' home. Once the home was secured, the handcuffs were removed. After Yeates returned to the home Hill was taken to a separate room and questioned by two officers.

The final suppression order made by the district judge suppressed "any statements given by [Yeates] *or others* to any officer inside the mobile home...." (Emphasis added.) The state points out that the only other person shown by the record of the suppression hearing to have given a statement was Darren Hill. The state argues that the order, as it related to Hill's statement, was erroneous. Yeates, it is argued, has no standing to challenge evidence derived from an alleged constitutional violation of Hill's rights. The state relies on *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) and *State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983). In his brief Yeates has not responded in any way to the state's argument or authority.

Our review of the record shows that the question of whether Hill's statement should be suppressed was never presented to the district court. In fact, Hill's name is never mentioned in arguments at *any* of the suppression hearings.

At the first hearing the following occurred:

MR. JARMAN: The motion goes to suppress.... I believe my client has standing only to suppress those items of personal effects and/or alleged contraband recovered from his premises....

In other words, my motion goes to suppress the evidence seized from the premises at 1002 Samuel. Whether the other evidence of Mr. Lineberry connects my client is up to the State's proof. But the objection that I make today, Your Honor, concerns any items seized and returned from the premises.

THE COURT: Any items seized on the premises?

MR. JARMAN: That's right.

THE COURT: Would you agree with that, Stephen?

MR. LARSEN [Prosecuting Attorney]: I can agree with that, Your Honor. I have no problem with that.

At the rehearing ordered by the court to consider the effect of the *Hoak* decision, the court was asked to exclude any and all statements made by Yeates to the officers. The prosecuting attorney later noted that "this thing about Yeates' statements to the police officer is a new thing. This was not raised at the suppression hearing initially."

Shortly after the second hearing but before the court's decision was entered, Yeates filed his "Motion in Limine" to exclude from the trial "any alleged statements by defendant, Kip Yeates...." Two days later the court entered its order deciding that items seized under the search warrant would not be suppressed, although the court noted that "any statements which Yeates made ... might be the subject of suppression." The final hearing was then held on the "Motion in Limine." Counsel argued only the admissibility of Yeates' statements. The court then stated orally and later in its written order "that the officers were in the home illegally and any statements given by this defendant *or others* to any officer inside the mobile home are suppressed and will not be admissible at the trial under the exclusionary rule." (Emphasis added.)

Upon this record we hold that the judge's ruling was overly broad and not supported by the record. Admittedly, the state has not shown any impelling need for Hill's statement in Yeates' trial because, presumably, Hill would be available to testify. The state concedes that Hill's prior statement would probably be excludable on grounds that it is hearsay. The state nevertheless argues that a hearsay issue is not germane to the constitutional grounds of the suppression motion presented by Yeates. We agree. Moreover, even if Hill testifies as a witness in Yeates' trial, his prior statements—although hearsay—

might be admissible for the limited purpose of impeachment. These are questions that should be addressed in the trial court as the need arises to do so. Accordingly, in fairness to both parties we vacate that part of the final order suppressing statements by "others."

The portion of the district court's order suppressing statements made by Hill is vacated. The remainder of the order, suppressing Yeates' statements and denying suppression of the physical evidence, is affirmed.

WALTERS, C.J., and BURNETT, J., concur.