985 P.2d 111

STATE of Idaho, Plaintiff–Respondent,

v.

Ean V. BARNETT, Defendant–Appellant.

No. 24272.

Supreme Court of Idaho,
Boise, January 1999 Term.

July 28, 1999.

Egusquiza & Weigt, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

WALTERS, Justice.

This is an appeal from Ean V. Barnett's judgment of conviction and sentence for involuntary manslaughter concerning the death of Jeffrey Towers. We affirm.

### FACTS AND PROCEDURE

In November 1995, the Valley County Sheriff responded to a report of a suspicious vehicle in the Paddy Flat area near Cascade, Idaho, which had been the scene of recent, unsolved burglaries. The sheriff stopped a pickup truck and identified the passenger as Ean V. Barnett, whose father owned a cabin in the area. When the officer's check revealed outstanding warrants from Ada County and upon the discovery of stolen checks in the pickup, Barnett was arrested and transported to the Valley County Jail.

While he was being held at the jail, Barnett disclosed to the sheriff that he had information concerning the disappearance of Jeffrey Towers, who had been reported missing in June of 1995. The police read Barnett the *Miranda* warnings before questioning Barnett further. During the subsequent interrogation, Barnett made statements regarding the death of Jeffrey Towers and the location of Towers' body. Barnett supplied the names of the other parties allegedly involved and ultimately led the police to the

site where Towers was killed and the body was burned and then buried.

Counsel appointed to represent Barnett negotiated with the Valley County prosecutor and entered into an agreement which provided that Barnett would be granted full immunity from criminal prosecution stemming from his involvement in the death of Jeffrey Towers in exchange for truthful statements in the course of interviews and any testimony he would give in any criminal proceeding involving Towers' murder. The immunity agreement also provided for a maximum charge of voluntary manslaughter, Idaho Code § 18–4006(1), to be filed against Barnett, if it was shown beyond a reasonable doubt that he was jointly responsible for Towers' death. Within days of the execution of the immunity agreement, however, Barnett was charged with first degree murder for the shooting death of Towers in violation of I.C. §§ 18–4001, –4002, and –4003.

On March 29, 1996, Barnett pled guilty to an amended charge of second degree kidnapping pursuant to an I.C.R.11 plea agreement. Having determined that Barnett's plea was made knowingly, intelligently and voluntarily, the district court accepted Barnett's plea. The district court, however, reserved the right to consider the sentence recommendation of the Rule 11 plea agreement until after the trial of Barnett's co-defendants. Following the sentencing hearing, which was held in two parts, the district court rejected the Rule 11 plea agreement that provided for a five to ten year sentence, and Barnett was allowed to withdraw his guilty plea.

The state filed an amended complaint on January 24, 1997, charging Barnett with first degree murder and the use of a firearm in the commission of a crime. At the preliminary hearing held before the magistrate, Barnett alleged that the state had breached the immunity agreement by the filing of the first degree murder charge. The magistrate declined to rule on the operation of the immunity agreement, whose terms specified that the question of breach was to be decided by the district judge, and bound Barnett over to the district court.

Following the entry of a not guilty plea, Barnett filed various motions to suppress evidence obtained from the stop of the pickup truck and the statements made while he was in custody. Barnett also filed a formal motion to dismiss on the ground that the first degree murder charge fell outside of the immunity agreement that provided for a maximum charge of voluntary manslaughter. By memorandum decision and order dated July 6, 1996, the district court denied all of the motions.

After trial to a jury, Barnett was found guilty of involuntary manslaughter in the death of Towers. Barnett was sentenced to a fixed term of ten years. He appeals from the judgment of conviction and sentence.

**A. The District Court Correctly Denied Barnett's Motion to Dismiss.**

In ruling on the motion to dismiss, the district court found that the immunity agreement was rendered null and void once the state determined soon after the execution of the agreement that Barnett had been untruthful to the investigators.[1] The district court also found that the immunity agreement had been superseded by the parties' Rule 11 plea agreement; and thus the court declined to hold a hearing on whether the immunity agreement had been breached by either party. Concluding that the state was no longer bound by the immunity agreement, the district court denied Barnett's motion to enforce the agreement and dismiss the murder charge.

1. The immunity agreement provided in pertinent part:
    1. Barnett will "testify truthfully in any criminal proceeding involving the death of Jeff Towers."
    2. In the event that Barnett testified falsely under oath, Barnett "acknowledges that this agreement can be declared null and void and that he will be prosecuted for perjury."
    3. Barnett will allow unrestricted interviews with the State's attorneys and investigators, in which he agrees to be truthful. In the event Barnett is untruthful in said interviews, Barnett "acknowledges that this agreement can be declared null and void."

■ The decision whether to grant or deny the motion to dismiss was dependent upon the district court's interpretation of the agreement between the defendant and the government and whether that agreement was violated. *See United States v. Plummer*, 941 F.2d 799, 803 (9th Cir.1991). Therefore, the standard of review of the district court's denial of the motion is the same as in civil contract cases. *Id.* The interpretation of a contract's meaning and legal effect are questions of law to be decided by the Court if the terms of the contract are clear and unambiguous. *City of Idaho Falls v. Home Indemnity Co.*, 126 Idaho 604, 888 P.2d 383 (1995). The meaning of an unambiguous contract and the intent of the parties must be determined from the plain meaning of the contract's own words. *Id.* Where a contract is determined to be ambiguous, interpretation of it is a question of fact that focuses on the intent of the parties. *Ada County Assessor v. Taylor*, 124 Idaho 550, 861 P.2d 1215 (1993). Whether the facts establish a violation of the contract is a question of law reviewed *de novo*. *United States v. Plummer, supra.*

We summarize Barnett's issues on appeal relating to the immunity agreement. Barnett argues that the immunity agreement is still in effect because it has not been declared null and void by the state. He claims that the state improperly filed a murder charge against him in contravention of the agreement; consequently, he claims that he was entitled to a dismissal of the murder charge and enforcement of the terms of the immunity agreement. This argument simply is not supported by the facts in the case.

■ Immediately after the immunity agreement was executed, the prosecutor informed defense counsel that the authorities had determined that Barnett was untruthful. This declaration by the state was within the immunity agreement and, at no time, did Barnett challenge this determination. It is clear also that the prosecutor, within about a week, filed an information charging Barnett with first degree murder, demonstrating the state's intent not to be bound by the agreement that would have permitted the state to file only a charge of voluntary manslaughter.

After the information was filed, Barnett did not move to enforce the immunity agreement, implicitly recognizing that the agreement was no longer binding on the parties. Then, Barnett entered into a plea agreement to an amended charged of second degree kidnaping. Again Barnett did not assert the immunity agreement, demonstrating further that he did not expect that the immunity agreement had any continuing force or effect. Finally, when the plea agreement was rejected by the district court, Barnett followed the terms of the plea agreement rather than the immunity agreement and returned to the magistrate division for a preliminary hearing as provided by the plea agreement. All of this conduct demonstrates that Barnett intended or recognized that the immunity agreement no longer existed or was enforceable but that it had been, in effect, declared null and void by the state.

We hold the immunity agreement invalid as a matter of law and not viable as a basis for Barnett to assert a right to a maximum charge of voluntary manslaughter in connection with the death of Jeffrey Towers. The district court's order denying the motion to dismiss, which relied on this conclusion, is hereby affirmed.

## B. There Was No Error In The Instructions On Duress Or On The Lesser Included Offenses.

■ Barnett argues that the district court improperly instructed the jury when it rejected the requested instruction on the defense of duress upon a finding that there was no evidence presented at trial to support such an instruction. The state correctly observes that the Court has not been provided with a copy of the transcript on appeal from which the Court can review the district court's decision. Without a proper record to review, error will not be presumed on appeal. *State v. Tucker*, 131 Idaho 174, 177, 953 P.2d 614, 617 (1998). In the absence of an adequate record, the missing transcript must be deemed to support the action of the trial court, and that decision is hereby affirmed. *State v. Mowrey*, 128 Idaho 804, 805, 919 P.2d 333, 334 (1996).

■ Barnett also argues that the district court's instruction on lesser included offenses was in error. Barnett cites no statutory or case law supporting his argument that only the lesser included offense of false imprisonment was proper on a charge of murder in the commission of a kidnaping. The issue, which is not sufficiently presented for appellate review, will not be considered. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

### C. Barnett Failed to Preserve Claim of Error Regarding The Use of The Videotape of Chad Toney's Statement.

■ One of the exhibits admitted into evidence at trial was the videotape of the statement given by Chad Toney, who had witnessed the murder of Jeffrey Towers. Under I.C. § 19–2203, the jury was entitled to take with it all exhibits into its deliberations. In this case, rather than simply giving the videotape to the jury with a television on which to replay the tape, the district court restricted the jury to watching the entirety of the videotape in the courtroom anew, without being allowed to stop the tape and discuss any portions of it. The district judge discussed with counsel how he proposed to allow the viewing of the videotape, and counsel agreed. Because there was no objection raised to the procedure employed by the district court, there is no ruling and no resultant error than can be reviewed on appeal. This Court will not review a trial court's alleged error on appeal unless the record discloses an adverse ruling which forms the basis for the assignment of error. *State v. Fisher,* 123 Idaho 481, 485, 849 P.2d 942, 946 (1993). Hence, we decline to review this issue further.

### D. The District Court Did Not Err In Admitting Barnett's Statements Made Subsequent To His Initial Illegal Detention.

Barnett argues that his custodial statements to the police were fruits of an illegal stop and should have been suppressed. But for the stop, Barnett's statements regarding the death of Jeffrey Towers would not have occurred.

■ The Fourth Amendment is offended when verbal evidence is the "fruit" obtained from an illegal search or seizure, and statements obtained thereby are barred from evidence in a criminal prosecution. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). An exception to the exclusionary rule exists, however, "where the State demonstrates that the incriminating statement was the product of the defendant's free will and occurred under circumstances where intervening events operated to break the causal chain between the illegal police conduct and the making of the statement by the defendant." *State v. Yeates,* 112 Idaho 377, 732 P.2d 346 (Ct.App. 1987). *See Wong Sun, supra; Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). For this Court to determine whether Barnett's statements should have been excluded, we must assess whether the state met its burden to establish that the statements were not obtained by exploitation of the illegal stop or by means sufficiently distinguishable to be purged of the primary taint. *See generally Wong Sun, supra; State v. Bainbridge,* 117 Idaho 245, 787 P.2d 231 (1990).

■ The district court held that the stop of the pickup in which Barnett was a passenger was not supported by reasonable suspicion and thus violative of the Fourth Amendment. The district court then considered a number of factors to determine whether suppression of Barnett's subsequent statements would be appropriate, including (a) the temporal proximity between the initial seizure and the subsequent disclosure; (b) the presence of intervening circumstances; and (c) the purpose and flagrancy of the official misconduct. *See Bainbridge, supra.*

The district court recognized the likelihood that the officers had in mind the possibility of learning more about the Towers' murder when they stopped the truck. Significant, however, was the district court's finding that the disclosures made by Barnett followed his arrest pursuant to valid outstanding warrants from Ada County which were discovered shortly after the stop. The disclosures were made nearly twenty-four hours after the illegal stage of his detention during which

time Barnett was not interrogated. The district court found that Barnett's arrest ended the brief illegal detention, which, along with the advisement of his Fifth and Sixth Amendment rights were viewed by the district court as intervening circumstances. The district court also found that Barnett's decision to talk was voluntary and in no way precipitated by the original, illegal stop. From the record before us, we conclude that the district court correctly determined that the causal connection between the illegal stop and the statements made to the police had been broken. The district court's ruling denying Barnett's motion to suppress the statements, therefore, was proper and will not be overturned in this appeal.

### E. The District Court Acted Within Its Discretion In Suppressing Actions Demonstrated By Barnett, As Distinguished From His Words Or Statements.

In ruling on Barnett's motion to suppress statements made to the police when Barnett was first detained, the district court also suppressed evidence of Barnett's actions in leading the police to Towers' remains. Barnett argues that this evidence should not have been suppressed upon the defense's motion. He maintains that the suppression motion addressed only his statements and that the district court's ruling exceeded the scope of the defense's request. He claims that by suppressing evidence of Barnett's actions, the jury was denied the information that it was Barnett who provided to the police the location of Towers' grave and the names of the other participants in the murder, to Barnett's prejudice.

Idaho Appellate Rule 35(a)(6) requires the argument portion of the brief to "contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes, and parts of the transcript and record relied on." In that Barnett has not stated any authorities or citations in his brief to show that there was any error by the district court in this regard, we do not address the argument further on appeal. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

### F. The Sentence Imposed Was Reasonable.

The district court entered a judgment of conviction against Barnett for involuntary manslaughter and imposed a fixed term of incarceration of ten years. Barnett claims on appeal that his sentence is excessive.

Where a sentence is within the statutory limits, it will not be reversed on appeal absent an abuse of the sentencing court's discretion. *State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Involuntary manslaughter is punishable by "a sentence to the custody of the board of correction not to exceed ten years." I.C. § 18–4007. Thus, Barnett's sentence, which was the maximum sentence that could be imposed, was within the statutory limits.

Upon further review of the record, focusing on the nature of the offense and the character of the offender, we are convinced that the sentence imposed by the district court was not excessively harsh. *See State v. Nelson,* 131 Idaho 210, 221, 953 P.2d 650, 661 (1998); *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). Barnett delivered Jeffrey Towers to the cabin where they met Ryan Robertson, Michael Olivera and Chad Toney. Barnett put a dog collar on Towers and led him, tied with ropes, on a nighttime march in the woods where he was pushed into a stream, dragged out onto the banks and shot dead. Barnett took no action to help Towers or to deter the others from inflicting harm on Towers. Though Barnett did not have a gun, he watched the shooting and took part in transporting Towers' body and in digging a grave where the body was burned. In light of the extremely serious and violent nature of the crime, we cannot say that the district court abused its discretion when sentencing Barnett to serve a ten-year determinate term in the state penitentiary.

### CONCLUSION

The judgment of conviction and sentence of ten years fixed for involuntary manslaughter is hereby affirmed.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL, concur.