5 P.2d 993

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Severino ZAVALA, Defendant–Respondent.**

No. 25225.

Court of Appeals of Idaho.

June 14, 2000.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Ronaldo A. Coulter, Appellate Public Defender; Mary K. Patton, Deputy Public Defender, Boise, for respondent. Mary K. Patton argued.

PERRY, Chief Judge.

The state appeals from an order of the district court granting Severino Zavala's motion to suppress. For the reasons set forth below, we reverse and remand.

## I.

## BACKGROUND

On May 7, 1998, a Twin Falls County deputy stopped a car for speeding. After effectuating the traffic stop, the officer approached the car and made contact with the driver. The driver provided an Illinois driver's license identifying him as Zavala. Zavala also provided the vehicle's registration and proof of insurance. The vehicle had Idaho license plates, but was not registered to Zavala.

The officer asked Zavala some general questions about where he was coming from and his destination. The officer returned to his patrol car and requested that other officers, including a canine unit, join him at the scene. While in his patrol car, the officer wrote Zavala a citation for speeding.

After completing all of the standard checks involved in a traffic stop, including the writing of the speeding citation, the officer again approached Zavala's vehicle. Although he had finished writing the citation, the officer did not issue it to Zavala, but had Zavala and a passenger step out of the vehicle for further questioning regarding where they were coming from and to where they were going. Shortly after the passenger answered the officer's questions and got back into the vehicle, the other officers arrived at the scene.

Once the other officers arrived, the initiating officer again approached the driver's side of the vehicle. The officer handed Zavala the citation for speeding, his driver's license, and proof of insurance and vehicle registration and informed Zavala that he was free to go. Immediately thereafter, however, the officer asked Zavala for consent to search the vehicle. After gaining, and confirming, Zavala's consent to a vehicle search, and having the occupants of the vehicle sit on a nearby lawn, the canine unit commenced a search of the vehicle. During that search, drugs were dis-

covered. Zavala and the other occupants of the vehicle were taken into custody. Upon being transported to the sheriff's office, Zavala was read his *Miranda*[1] rights and signed a form indicating his waiver of those rights. In a subsequent statement, Zavala admitted to ownership of the drugs discovered in the vehicle.

Zavala was charged with possession of methamphetamine, I.C. §§ 37–2732(c)(1) and –2707(d)(2), and possession of marijuana in excess of three ounces, I.C. § 37–2732(e). Subsequently, Zavala filed a motion to suppress the evidence seized from the car as well as his statements. The district court granted Zavala's motion. The state appeals.

## II.

## ANALYSIS

### A. Standard of Review

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

### B. Analysis

The district court, in granting Zavala's motion to suppress, found the purpose of the traffic stop was completed before the other officers arrived. Thus, the district court determined that Zavala was the subject of an illegal detention. On appeal, the state does not challenge this determination. Instead, the state contends that the illegal detention ended prior to Zavala's consent to search the vehicle being given. Therefore, the state asserts that the district court erred when it failed to determine whether Zavala's consent to the search of the automobile was voluntary. The state asserts that if Zavala's consent was voluntary, then neither the evidence, nor Zavala's statement, should be suppressed.

After finding that Zavala was illegally detained, the district court stated:

> The final issue is the affect of the illegal detention on the evidence found during the consensual search of the vehicle and [Zavala's] written confession.... [T]he evidence seized from the vehicle which [Zavala] was driving cannot be introduced against [Zavala] since it was the product of an unlawful seizure.

> Additionally, statements made by [Zavala] which "result from being confronted by the police with the fruits of an illegal search constitute the fruit of the poisonous tree and are inadmissible in evidence in a criminal prosecution."

(Citations omitted.)

In this case, the search of the vehicle was conducted without a warrant. In his motion to suppress, Zavala alleged that any consent given "was not knowingly and voluntarily given, and/or was the product of coercion."

■ The district court did not determine whether the illegal detention ceased prior to the officer's request for consent to search the automobile. Such a determination is necessary because consent to search, given during an illegal detention, is tainted by the illegality and, thus, is ineffective. *Florida v. Royer*, 460 U.S. 491, 507–08, 103 S.Ct. 1319, 1329–30, 75 L.Ed.2d 229, 242–43 (1983). Where consent and a search pursuant to that consent accompany an arrest, "the events are so intertwined, one with the other, that the consent does not expunge the taint of the illegal arrest." *State v. Barwick*, 94 Idaho 139, 142, 483 P.2d 670, 673 (1971). *See also State v. Whiteley*, 124 Idaho 261, 265, 858 P.2d 800, 804 (Ct.App.1993) (Where consent and a subsequent search accompany an arrest, the events are intertwined to the extent that if the arrest is illegal, the search pursuant to the consent is illegal as well.). There is no distinction between an illegal arrest and an illegal detention for purposes of the rule announced in *Barwick* and followed in *Whiteley*.

■ Furthermore, both parties concede that the district court failed to determine whether Zavala's consent to search the vehi-

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

cle was voluntarily given. Zavala's motion to suppress placed this issue squarely before the district court. The question whether a waiver of a Fourth Amendment right was voluntary, knowing, and intelligent is a factual issue lending itself best to resolution by the trial court. *State v. Josephson*, 125 Idaho 119, 122, 867 P.2d 993, 996 (Ct.App.1993). Our Supreme Court has held that where a trial court did not make express findings of fact in the disposition of a motion, an appellate court should examine the "implicit" findings that support the trial court's ruling. *State v. Schevers*, 132 Idaho 786, 788, 979 P.2d 659, 661 (Ct.App.1999). The state urges this Court to imply a finding of voluntariness based on the language of the district court's order, which states the "final issue is the affect of the illegal detention on the evidence found during the consensual search of the vehicle." However, based on the record before us, and the absence of any findings of fact regarding the voluntariness of Zavala's consent, this Court will not imply a finding of voluntariness in the district court's order.

Based on the foregoing analysis, the critical inquiries in the present case are whether, at the time of his consent, Zavala was still illegally detained; and, if not, whether Zavala's consent was voluntary. Unfortunately, there are no findings by the district court contained in the record regarding either of these questions.

Accordingly, we conclude that the district court's order must be reversed and the case remanded for further findings by the district court. We note that, the district court, in its discretion, may utilize the existing record in making the requisite findings of fact, *see State v. Wren*, 115 Idaho 618, 626, 768 P.2d 1351, 1359 (Ct.App.1989), because the parties relied solely on the transcript from the preliminary hearing in support of their arguments in favor of, and against, suppression.

■ The district court is directed to determine whether the illegal detention ended when the officer informed Zavala that he was free to go, issued Zavala the speeding citation and returned his license, registration, and proof of insurance. In order to do so, the district court must consider all the circumstances surrounding the encounter to determine whether a reasonable person would have believed that he or she was free to terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388–89, 115 L.Ed.2d 389, —— (1991); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). If the illegal detention had not ended when Zavala consented to the search of the vehicle, then the evidence seized from the vehicle must be suppressed.

■ Only if the district court finds that the illegal detention ceased, must it determine whether Zavala's consent to search was voluntarily given. The Fourth Amendment requires that all searches and seizures be reasonable. Warrantless searches and seizures are considered unreasonable per se unless they come within one of the few specifically established and well-delineated exceptions to the warrant requirement. *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991); *State v. Murphy*, 129 Idaho 861, 863, 934 P.2d 34, 36 (Ct.App.1997). A search conducted pursuant to consent is such an exception to the warrant requirement. *State v. Rodriguez*, 128 Idaho 521, 523, 915 P.2d 1379, 1381 (Ct.App.1996). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 261, 858 P.2d at 803. The state has a heavy burden to prove that consent was given freely and voluntarily. *State v. Huskey*, 106 Idaho 91, 94, 675 P.2d 351, 354 (Ct.App.1984). The state must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854, 875 (1973); *State v. Staatz*, 132 Idaho 693, 695, 978 P.2d 881, 883 (Ct.App.1999). If the district court determines that Zavala's consent was involuntary, then the evidence seized from the vehicle must be suppressed.

Only if the district court determines that Zavala's consent was voluntary must the district court analyze whether Zavala's consent was sufficiently attenuated to dissipate the taint of the illegal detention. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441, 453 (1963); *State v. Luna*, 126 Idaho 235, 239, 880 P.2d 265, 269 (Ct.App.1994). The district court must

make the above findings in order to determine whether the evidence seized from the vehicle should be suppressed.

Regardless of the district court's analysis of Zavala's consent, it must analyze whether the causal connection between the illegal detention and Zavala's statement was broken. *See State v. Bainbridge,* 117 Idaho 245, 249, 787 P.2d 231, 235 (1990). The question of whether a statement, following an illegal arrest, is the product of free will must be answered on the facts of each case. *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975). The state bears the burden of showing that the causal connection between an impermissible seizure and a statement made by a detainee, has been sufficiently broken to render those statements admissible at trial. *Bainbridge,* 117 Idaho at 250, 787 P.2d at 236. When analyzing whether the state has met its burden, the district court should consider, the temporal proximity of the arrest and the statement, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 427–28 (1975); *State v. Yeates,* 112 Idaho 377, 383, 732 P.2d 346, 352 (Ct.App.1987). Additionally, we note that *Miranda* warnings, although an important factor in the analysis of whether an incriminating statement was the product of free will, are insufficient by themselves to attenuate the taint of an illegal arrest. *Brown,* 422 U.S. at 605, 95 S.Ct. at 2262, 45 L.Ed.2d at 428. This is because *Miranda* warnings alone do not sufficiently deter Fourth Amendment violations, *id.* at 601, 95 S.Ct. at 2260–61, 45 L.Ed.2d at 425–26, and an analysis under *Wong Sun* "mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." *Id.* at 602, 95 S.Ct. at 2261, 45 L.Ed.2d at 426.

## III.

## CONCLUSION

We hold that the district court erred when it failed to determine whether Zavala re-

mained unlawfully detained when he agreed to permit a search of the automobile. We further hold that the district court erred when it failed to find whether Zavala's consent to search the vehicle was voluntary. Therefore, the order of the district court is reversed, and this case remanded for proceedings consistent with this opinion.

Judge Pro Tem EISMANN concurs.

Judge SCHWARTZMAN, Dissents.

I respectfully dissent. I would uphold the district judge's order of suppression and spare the state the embarrassment of returning to the trial court to face another round of suppression findings.

The facts of this case are unsettling, and should be amplified to give the reader a clearer *perspective* of what was really going on. The state *concedes* the illegality of the continuing detention after the routine traffic stop procedures were completed, and well it should! The car was occupied by seven people, all presumably Hispanic,[1] including three adults (one male and two female), three children and Zavala, the driver. Officer Sievers, noting that Zavala had an Illinois driver's license and that the Oldsmobile was registered in Idaho to someone else, requested "assistance" from deputy Porter and his drug dog, "Gunnar," and another officer. Sievers testified that his reason for extending the duration of the traffic stop after writing the speeding citation was as follows:

[Q] Did you find anything out of the ordinary about the driver when you were speaking to him at the beginning?

[A] I noticed that his driver's license was through, from Illinois. The vehicle was registered to somebody else in the state of Idaho.

. . . .

[Q] What did you do when you returned to your vehicle with that information?

---

**1.** The racial identity of the two women and three children is not specifically disclosed on the record, although the trial court referred to them as part of Zavala's family. The male passenger was identified as Juan Vasquez.

[A] Uh, due to some of the training that I've had in drug concealment and uh, other courses, I felt, uh, that I might be able to obtain a search of this vehicle, due to the fact that uh, the information given uh, matched some of the things that we look for in uh, drug concealment.

[Q] In what, what in your training, what were you alerted to by your training in this particular case?

[A] We look for uh, such things as an out-of-state driver's license with uh, with a vehicle that is not theirs. Either rental cars or someone else's vehicle.

Sievers further indicated in his police report that he needed the other officers to get a consent to search the vehicle. Sievers said that he waited "no more than twenty minutes" for the other officers to arrive.

After completing the citation, but prior to serving it on Zavala, Sievers returned to the Oldsmobile, had Zavala step out of the car and re-questioned him about where he was going, where he was from and who his passengers were. Sievers then asked Zavala to get back in the car, got the male passenger to step out of the car, and questioned him. When Deputy Porter, "Gunnar" and the other officer arrived, Sievers had completed his questioning and was standing beside his patrol car, waiting for reinforcements. Sievers' emergency lights were on; the two back-up patrol cars were parked behind Sievers with their flashers on.

While the other officers stood beside Sievers' patrol car waiting to "find out whether we were going to [be] able to conduct a search," Sievers approached Zavala in the Oldsmobile, told him he was "free to go" and handed him his driver's license, the car registration and insurance papers. Immediately thereafter, Sievers asked Zavala if he would "mind if we perform a vehicle search?" Zavala indicated something to the effect that it would be "okay."

The crux of this case hinges on a focused and compressed timeframe during which the state asserts that (1) the admittedly illegal detention ended, (2) Zavala gave a free and voluntary consent to search the car and (3) the causal connection between the unlawful detention and the consent was broken, i.e., that Zavala's "consent" was sufficiently attenuated to dissipate the taint of the illegal detention. The district court can certainly find, *as a matter of fact*, that this illegal detention never really ended, and that the consent was the result of psychological duress and implied coercion, not to mention an imperfect facility with the English language.[2] Regardless, the court must conclude, *as a matter of constitutional law and policy*, that the causal connection between the primary taint of Zavala's illegal detention and his purported consent was never broken under the *Wong Sun* doctrine. 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441, 453 (1963).

## 1. The Illegal Detention

The state concedes that the detention of Zavala and his six passengers became illegal after all the normal procedures for a routine traffic stop had been completed. The officer justified his actions in calling for back-up, including "Gunnar" the drug dog, on his inchoate suspicion or hunch that the car might contain drugs because the driver had an out-of-state license with an in-state automobile registration to someone else, i.e., the vehicle didn't belong to Zavala or anyone else in the car. What the officer *conveniently forgot* to articulate in this matrix of suspicion was the fact that the automobile was occupied by Hispanics. It takes no legal rocket-scientist to discern the spectre or appearance of "racial-profiling" as playing some role, *consciously or unconsciously*, in the officer's decision to call in reinforcements to try to obtain a "consent search" and maybe discover some drugs.[3]

I have often wondered, both as a trial judge for over twenty-six years and as an

2. I note that throughout all court proceedings, Zavala was provided with a Spanish-speaking translator.

3. I seriously doubt that the Clark W. Griswold family, on their way from Illinois to Walley-World in the borrowed family truckster (a reference to the hit comedy movie NATIONAL LAMPOON'S VACATION, with Chevy Chase, Warner Bros.1983), would face such an array of police interest and interdiction, including "Gunnar" the drug dog.

appellate judge, just how many times this type of police scenario is replayed and no drugs are ever found. Of course, we shall *never know,* because the driver is merely allowed to go on his way, relieved that this mini-ordeal is now over without further inconvenience, and not particularly concerned that his constitutional rights have been subtly violated.

## 2. The Consent

The only evidence on the voluntariness of Zavala's consent was preliminary hearing testimony to the effect that Sievers handed Zavala his driving papers and told him that he was "free to leave." This occurred immediately prior to Sievers asking Zavala, "mind if we conduct a vehicle search?" The request for consent occurred after two other police cars had arrived on the scene, with amber lights flashing, and with the officers and "Gunnar" the drug dog, standing at the ready, beside Sievers' patrol car parked immediately behind the Oldsmobile. Sievers testified that he did not detect a language barrier problem, but neither could he recall Zavala's words or whether he recorded the consent on audio or videotape.

What is particularly troubling is the fact that this entire scenario was being choreographed or staged in an effort to obtain Zavala's consent because the officer knew he had no basis upon which he could legally search the car. The *ploy* worked such that some type of "consent" was obtained, and the families were immediately escorted out of the car and herded over to the lawn of an adjacent church while the search was conducted. "Gunnar" alerted, all the adults were then handcuffed and taken to the Twin Falls County Jail and the car was impounded.

The state has the legal burden of proving by a preponderance of the evidence that Zavala's consent was given freely, understandingly and voluntarily, and not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854, 875 (1973). This state will have a difficult time in proving to the trial judge, especially in view of the fact that the illegal detention never really ended; and even if it

*technically* did, there was no appreciable lapse of time and intervening circumstances to purge the primary taint between the illegal detention and the obtaining of the "consent." *Brown v. Illinois,* 422 U.S. 590, 602–05, 95 S.Ct. 2254, 2261–63, 45 L.Ed.2d 416, 426–28 (1975).

## 3. As a Matter of Constitutional Law and Policy, There Can Be No Attenuation Between Zavala's Unlawful Detention and his Purported Consent to Search

The second prong of *Wong Sun* —the attenuation analysis—requires the district court to consider such factors as (a) the temporal proximity between the initial seizure and the consent to search; (b) the presence of intervening circumstances; and (c) the purpose and flagrancy of the official misconduct. *See, e.g., State v. Barnett,* 133 Idaho 231, 235, 985 P.2d 111, 115 (1999); *State v. Bainbridge,* 117 Idaho 245, 250–51, 787 P.2d 231, 236–37 (1990).

Regarding the temporal proximity between the unlawful detention and the consent to search, the district court found that:

> [o]nce the other officers arrived at the scene Deputy Sievers approached the driver's side of the vehicle and handed the Defendant the citation for speeding, the Defendant's driver's license, proof of insurance and vehicle registration, and told the Defendant he was free to go. Both of the other officers were located at the passenger side of Deputy Sievers' patrol car which was behind the vehicle driven by the Defendant. The other officers were waiting to see if Deputy Sievers would obtain Defendant's consent for a search of the vehicle.
>
> Immediately after telling the Defendant he was free to go, Deputy Sievers asked Defendant for consent to search the vehicle.

Consent given immediately upon the termination of an unlawful detention does not *ipso facto* break the chain of causation between the consent and the unlawful detention. *State v. Lira–Lara,* 132 Idaho 465, 974 P.2d 1094 (1999) (implicitly holding that Lira–Lara's consent to search was the product of

his unlawful detention of up to forty-five minutes while waiting for a Spanish-speaking interpreter and drug dog to arrive at the scene of a traffic stop); *see also United States v. Gregory,* 79 F.3d 973, 979 (10th Cir.1996) (There was no attenuation between the unlawful detention of the traffic stop and defendant's consent to a search of his vehicle requested by the officer immediately after returning the defendant's driver documents. Where consent is given after an illegal detention, the government carries a *heavy burden* of proving that the primary taint of the illegal stop is purged sufficient to break the causal connection between the illegal detention and the consent.).

Finally, the purpose and flagrancy of the police conduct must be considered. This is especially true where the unlawful detention is part of a deliberate and calculated plan to exploit the opportunity to ask for consent to search the vehicle. *See State v. Shoulderblade,* 905 P.2d 289, 294–95 (Utah 1995). Here, while awaiting the arrival of "Gunnar" the drug dog and back-up, Sievers again questioned Zavala and his male passenger about where they were going, where they were from and the identities of the other occupants. As the district court found, the state failed to demonstrate any reason for this re-questioning other than waiting for the drug team to arrive. Zavala and his party of six were detained without reasonable suspicion for ten to fifteen minutes while Sievers merely bided his time until reinforcements arrived, thus giving Sievers the added psychological leverage and intimidation factor he sought in asking for consent. *See Brown,* 422 U.S. at 602, 95 S.Ct. at 2261, 45 L.Ed.2d at 426.

Because the apparent purpose of the extended illegal detention indicates an exploitation thereof for the sole purpose of obtaining consent, with no intervening temporal circumstances, Zavala's purported consent to search was not sufficiently attenuated to dissipate the primary taint of that unlawful detention. Any other result would send out a green light and stamp of approval to this type of unconstitutional conduct in the hopes it can be exploited and metamorphed into a legal consent search.

Accordingly, as previously stated, I would uphold the district judge's original order of suppression and spare the state the embarrassment of returning to the trial court to face another round of suppression findings.