Judge Pro Tern SCHWARTZMAN,
Specially Concurring.
I concur wholeheartedly in the result reached by the majority. However, because the first consent to search followed almost immediately after the initial unlawful entry and interview with K.Q.,[1] I would engage in an “attenuation analysis” just to be on the constitutional safe side.
Whether a consent to search is voluntary under the Fifth Amendment is an entirely separate question from whether a consent to search is tainted by a prior Fourth Amendment violation. See New York v. Harris, 495 U.S. 14, 23, 110 S.Ct. 1640, 1645, 109 L.Ed.2d 13, 23 (1990); Brown v. Illinois, 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416, 424 (1975). Voluntary consent occurring after an unlawful warrantless entry does not automatically expunge the taint of the Fourth Amendment violation. State v. Zavala, 134 Idaho 532, 536, 5 P.3d 993, 997 (Ct.App.2000). And consent to search will not expunge the taint of unlawful police conduct where the events are irrevocably intertwined. State v. Kerley, 134 Idaho 870, 874, 11 P.3d 489, 493 (Ct.App.2000).
Once an illegality has been shown, a court must decide whether the evidence has come about by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. Id. at 875, 11 P.3d at 494 (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Relevant factors include the presence of intervening circumstances, temporal proximity, and the purpose and flagrancy of the official misconduct. Id.; *137 see also United States v. Washington, 387 F.3d 1060, 1073 (9th Cir.2004). Applying the above criteria to the facts established herein, I find that the subsequent incriminating evidence obtained in this case did not come about by exploitation of the illegal entry, but instead by means sufficiently distinguishable to be purged of any primary taint.[2]
The test for determining whether the primary taint of a prior constitutional violation has been purged is commonly referred to as an attenuation analysis or attenuation test, and advances the exclusionary rules “twin aims of deterrence and judicial integrity.” Washington, 387 F.3d at 1072-73 (citing Brown, 422 U.S. at 599-600, 95 S.Ct. at 2259-2260, 45 L.Ed.2d at 424-425); see also Note, State v. Zavala: Consent to Search as Attenuating the Taint of Illegal Searches and Seizures, 38 Idaho L.Rev. 135 (2001). My attenuation analysis is compelled by the following facts and circumstances:
(1) The officers were faced with a challenging situation in the field. A fourteen-year-old caller notified the police that her thirteen-year-old friend was living in the same household where McBaine was allegedly manufacturing methamphetamine;
(2) when McBaine answered the door and voluntarily spoke outside to one of the officers, the other officer could plainly see the mother just inside the threshold;
(3) K.Q. and her young sister-both potential victims-were also seated on a sofa near the mother and were easily visible from the doorway;
(4) the officer’s “trespass” in crossing the threshold, while unlawful, was brief and the intrusion minimal, at worst a minor and technical invasion of McBaine’s rights. See United States v. Seidman, 156 F.3d 542, 549 (4th Cir.1998). The officer’s intent was to contact and speak with a willing juvenile witness and her mother in a potentially volatile situation apart from the very adult whom the juvenile claimed was manufacturing methamphetamine in the same home in which she lived. The entry was not made for the ulterior purpose of extracting a consent to search from McBaine;
(5) no contraband evidence of any kind was observed or seized by the officer during this brief encounter;
(6) the officer thereafter followed McBaine’s request to talk outside with any of the other residents;
(7) the general atmosphere was kept congenial and was not calculated to cause surprise, fright and confusion through a show of force; Id.; compare Brown, 422 U.S. at 605, 95 S.Ct. at 2262, 45 L.Ed.2d at 428;
(8) in effect, the officer could have achieved the same result by simply knocking on the open door and requesting the juvenile and her mother to accompany him outside to talk;
(9) the integrity of the judicial system will not be compromised by denying suppression of evidence in this case. The conduct of the police here does not rise to the level of purposeful or flagrant misconduct requiring prophylactic exclusion of evidence. See Rawlings v. Kentucky, 448 U.S. 98, 110, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633, 645 (1980).
Accordingly, all of the state’s subsequent evidence was attenuated and sufficiently distinguishable from the illegal entry so as to be fully purged of any primary taint.

. Without the first-hand information provided by K.Q., the police would not have had sufficient reliable information to obtain a search warrant.

. Although the district court did not engage in an inquiry as to whether the taint of the illegal entry had been purged, its findings and the record are sufficient to make such a determination so that remand would not be necessary. Brown, 422 U.S. at 604, 95 S.Ct. at 2261, 45 L.Ed.2d at 427.