880 P.2d 265

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Joel Haro LUNA, Defendant–Appellant.**

No. 20288.

Court of Appeals of Idaho.

Aug. 30, 1994.

Spencer E. Daw, Idaho Falls, for appellant.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent. Michael A. Henderson argued.

WALTERS, Chief Judge.

Joel Luna was found guilty by a jury of conspiracy to deliver a controlled substance, I.C. § 37–2732(f); possession with intent to deliver a controlled substance, I.C. § 37–2732(a)(1)(A); and failure to affix a drug tax

stamp, I.C. § 63–4207(2), I.C. § 37–2732(c). Prior to trial, Luna moved to suppress two items of evidence he expected the State to introduce: the cocaine seized from the car in which he was a passenger at the time of his arrest, and an incriminating statement he made to a police officer after his arrest. The suppression motion was denied by the district court, and the State introduced these items in evidence at the trial. Luna appeals from the judgment of conviction, asserting that the district court erred by denying the suppression motion. We conclude that the district court should have suppressed the evidence. Accordingly, we reverse the order denying the motion to suppress and we vacate the judgment of conviction.

The facts presented at the suppression hearing show the following. Luna was in an automobile, with three other men, traveling on a highway when the car was stopped by the police. One of the other men was driving the vehicle; another was the owner of the car, and Luna and the fourth man were passengers. Luna was seated on the passenger side in the front of the car. An Idaho State Police officer had noticed the vehicle traveling below the speed limit and erratically crossing the centerline. Suspecting that the driver might be under the influence of alcohol, the officer stopped the vehicle. He was assisted by another State patrolman who arrived at the scene. After interrogating the driver, conducting field sobriety tests and running a records check, the officers determined that the driver was not under the influence or wanted on any outstanding warrants. The officer who had stopped the vehicle decided he would not cite the driver for any offense. However, he continued to talk with the driver, in his police vehicle, while the second patrolman remained near the stopped car containing Luna and the other occupants. Eventually, at the officer's request, the driver consented to a search of the automobile although the officer had no articulable basis for searching the vehicle. The search uncovered a kilogram of cocaine hidden under a blanket on the back seat. All four of the occupants of the vehicle were then arrested for possession of the cocaine. In the booking process at the jail, an officer asked Luna where he got the cocaine. Ac-

cording to the officer, Luna stated that the driver of the car had paid cash for the drugs in Las Vegas. The cocaine and the officer's testimony concerning this statement were introduced against Luna at trial.

Before trial, Luna moved to suppress the incriminating statement. He also moved to have the cocaine suppressed, as did the driver and the owner of the car. The other passenger pled guilty. The district court determined that although the police had a valid reason for initially stopping the car, the officers had improperly continued to detain the car and its occupants, and had coercively obtained consent from the driver to search the car. The court held that the seizure of the cocaine was illegal with respect to the driver and the owner of the car and suppressed the cocaine in relation to them. The charges against those two defendants were ultimately dismissed. However, the district court also determined that Luna, as a passenger, did not have standing to challenge the legality of the stop of the car, its continued detention, the search of the car or the seizure of the cocaine. The court further found that Luna had not invoked his right to remain silent when he made the incriminating statement at the jail. Accordingly, the State was allowed to introduce the evidence at trial. Following entry of the judgment of conviction, Luna brought this appeal.

█ First, we note that our review of decisions regarding motions to suppress is bifurcated. We defer to the lower court's findings of fact unless they are clearly erroneous. *State v. Weber*, 116 Idaho 449, 776 P.2d 458 (1989); *State v. Carr*, 123 Idaho 127, 844 P.2d 1377 (1992). However, we exercise free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of facts found. *Carr*, 123 Idaho at 127, 844 P.2d at 1377.

### I.

█ The dispositive issue is whether Luna had standing to challenge the seizure of the cocaine. Suppression of evidence may be obtained only by those whose rights are infringed. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v.*

*Cowen,* 104 Idaho 649, 662 P.2d 230 (1983); *State v. Bottelson,* 102 Idaho 90, 625 P.2d 1093 (1981). In *State v. Haworth,* 106 Idaho 405, 679 P.2d 1123 (1984), the Idaho Supreme Court held that both the driver of a vehicle and a passenger in the vehicle have standing to contest the reasonableness of an investigatory stop of the vehicle.

Here, the district court held that the initial stop of the vehicle by the police was justified as an investigatory stop under *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). *See also, United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). However, the court determined that the continued detention of the vehicle and its occupants became unreasonable after the reasons for the initial stop dissipated and the officer concluded that the driver was not operating the vehicle while under the influence, was not wanted on any outstanding warrant and would not be cited for any traffic violation. Accordingly, the district court held that the consent to search, given during the ensuing illegal detention, was invalid and that the cocaine found as a result of the consensual search would be suppressed as to the driver and the owner of the vehicle. The court refused to suppress the evidence as to Luna or the other passenger, ruling that neither Luna nor the other passenger had standing to challenge the seizure of the cocaine.

We conclude that the district court's ruling is contrary to the Supreme Court's decision in *Haworth.* In *Haworth,* an Idaho State police officer observed an automobile traveling slowly, at 10:00 o'clock at night, coming from a small town unprotected by any law enforcement agency. The automobile's trunk lid was open, and the officer observed a large object in the trunk which weighted the rear end down.[1] The officer stopped the vehicle, searched it, and seized evidence upon which the two occupants (the driver, Haworth, and the passenger, Cowan) were then charged with robbery. The defendants moved to suppress the evidence seized from their automobile. The district court ruled that the stop of the vehicle was an improper investigative

stop and granted the defendants' motion to suppress. On an appeal brought by the State, the Supreme Court addressed the issue of whether the defendants had standing to challenge the investigatory stop of the vehicle. The Court approached the question by noting that there is a distinction between standing to challenge an allegedly unreasonable stop and standing to challenge an allegedly unreasonable search. To contest a search of the vehicle, a defendant "must demonstrate some proprietary interest in the premises searched or some other interest giving [the defendant] a reasonable expectation of privacy." 106 Idaho at 407 n. 2, 679 P.2d at 1125 n. 2. With regard to standing to challenge the allegedly illegal stop, however, the Court explained:

> "[S]topping an automobile and detaining its *occupants* constitute a 'seizure' within the meaning of [the fourth amendment], even though the purpose of the stop is limited and the resulting detention is quite brief." *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (emphasis added). The personal rights of both Cowan as passenger and Haworth as driver 'to the possession and control of his own person, free from all restraint or interference from others,' *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968), were infringed upon by the investigatory stop. *Therefore, both have standing to contest the reasonableness of the stop.*

106 Idaho at 406, 679 P.2d at 1124 (emphasis added).

Here, the district court held that the initial stop of the vehicle was a valid investigatory stop to "find [whether] a traffic violation was in progress in relation to either driving under the influence or inattentive driving." The court also noted that an officer may ask a detainee a moderate number of questions to determine the driver's identity and gain information to confirm or dispel the officer's suspicions, but "unless the detainee's answers supply probable cause to arrest, then [the detainee] must be released." The court further recognized that during a traffic-viola-

---

1. The large object in the vehicle's trunk turned out to be a safe, according to the facts revealed in a related appeal. *See State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983).

tion stop the officer may conduct "a warrant check." The court then opined that a lawful investigatory stop may become an illegal detention when the detainee is under apprehension of being charged with an offense, the restraint is for more than a momentary period, and the detention occurs in an isolated setting where the detainee is alone with police officers. The district court stated:

When you take those indicia that I have gleaned from those cases and apply them to the facts here and reading the explanation from Officer Gonzales, why he went on with the questioning as a P R [public relations] move and talked about their [the occupants'] travel, and you view that in the totality of circumstances of what had gone on before, the field test, multiple commands to remove himself from the car, the fact that he was isolated, at the time the consent [to search] was given he was alone with police officers. He was never told he was free to go. He had an obvious problem with English even though the officer did converse with him in Spanish, there is a large probability that when you glean that from the transcript, there would have been some sort of understanding on what was going on.

The interrogation as to the travel based upon the activities of the police officers, I will just be honest, I can not believe it was a P R move to ask those questions.

I find Officer Anderson's explanation that he did not suspect narcotics until he · made the search, and he can't articulate why he detained him. When you say there are no maps and luggage, there is only a couple of things you can tie that up to, and Officer Anderson who is doing the check is saying no suspicion of narcotics, there is certainly no reasonable probable cause.... At that point they had to cease and desist with the detention and release.

Now that takes me to the standing problem. So the Court will rule that their consent that was given by [the driver] was under a coercive nature that is not permitted under the case law cited.

The district court then held, as to the driver and as to the owner of the vehicle, that the evidence was obtained as a result of an inval-

id consent because of the unlawful detention of the driver. However, the court held that Luna, as a passenger, had no standing to challenge the seizure of the evidence.

■ We perceive the error in the district court's conclusion to be readily apparent. If the evidence was seized as a result of an investigatory stop that became unreasonable due to the illegal detention of the driver, then the evidence was obtained unlawfully also as to the passengers, who had standing under *Haworth* to challenge the reasonableness of the derivative detention resulting from the investigatory stop.

Although the State recognizes the right of the driver and passengers to challenge the initial stop under *Haworth*, the State essentially argues that since the initial stop was found to be a valid investigatory stop, Luna's Fourth Amendment right terminated at that point and did not survive for the purpose of challenging the subsequent seizure of cocaine pursuant to the driver's consent. We find this argument to be untenable.

We acknowledge that the investigative stop in *Haworth* was held to be invalid at its inception. However, we do not read that case as a limitation on when, during the course of a vehicular stop by the police, the driver or a passenger in the vehicle may challenge the reasonableness of the continuation of the stop. If such a stop ripens into an unreasonable detention of the driver, as the district court here found, then it ripened into an unreasonable detention of the passengers also, absent any showing by the State to justify further detention of the passengers separately by the officers. To hold otherwise would allow an illegal stop to continue indefinitely without consequence to the State. Accordingly, we hold that the district court, based upon the facts found, erred in refusing to suppress the cocaine as evidence during Luna's trial.

## II.

■ Luna also asserts that the district court erred when it denied his motion to suppress the incriminating statement he made to an officer while in custody at the police station. While this issue was present-

**239**

ed to the district court as one involving a waiver of Luna's right to remain silent after he had been advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we need not address the district court's decision in that respect, which allowed introduction of the evidence. Instead, we deem the inquiry by the officer, referring to the cocaine found in the car with Luna, as "fruit of the poisonous tree," sometimes referred to as "secondary evidence derived from the illegally seized evidence itself." *United States v. Houltin,* 566 F.2d 1027, 1030 (5th Cir.), *cert. denied,* 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 118 (1978). Evidence seized during an unlawful search cannot be used as proof against a victim of the search, and "[t]he exclusionary prohibition extends as well to indirect as the direct products of such invasions." *Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). Particularly apposite here is the observation by the United States Supreme Court in *Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 2666, 73 L.Ed.2d 314 (1982):

> If *Miranda* warnings were viewed as a talisman that cured all Fourth Amendment violations, then the constitutional guarantee against unlawful searches and seizures would be reduced to a mere "form of words."

 Statements made by the defendant as a result of being confronted by the police with the fruits of an illegal search constitute the fruit of the poisonous tree and are inadmissible in evidence in a criminal prosecution. *See,* Gary D. Spivey, Annotation, *"Fruit of the Poisonous Tree" Doctrine Excluding Evidence Derived From Information Gained in Illegal Search,* 43 A.L.R.3d 385, §§ 5[a], 11 (1972). We previously have recognized that an exception to this rule exists where the State demonstrates that the incriminating statement was the product of the defendant's free will and occurred under circumstances where intervening events operated to break the causal chain between the illegal police conduct and the making of the statement by a defendant. *State v. Yeates,* 112 Idaho 377, 732 P.2d 346 (Ct.App.1987). Here, however, the facts proffered by the State at the suppression hearing failed to establish the existence of such an exception. Consequently, we conclude that the incriminating statement made by Luna was derived directly as a result of the unlawful seizure of the cocaine. The statement, as well as the cocaine, should have been suppressed by the district court.

The order denying Luna's motion to suppress is reversed and the judgment of conviction is vacated. The case is remanded for further proceedings.

LANSING, J., concurs.

PERRY, Judge, specially concurring.

I concur with the majority opinion, agreeing that this case is controlled by the Idaho Supreme Court decision in *State v. Haworth,* 106 Idaho 405, 679 P.2d 1123 (1984), which this Court must follow. I write separately only to discuss what I see to be an inconsistency in prior decisions by the Supreme Court that may have caused confusion in the trial bench and bar, and hopefully to provide some instruction in this area.

The appellant in this matter, Luna, relies heavily on *Haworth.* The state, not surprisingly, fails to cite *Haworth* in its brief before this Court. The state chooses to argue *State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983), which again not surprisingly, the appellant fails to cite in his brief.

I will not belabor the facts of *Haworth* and *Cowen* here, but simply draw attention to those cases. Suffice it to say, however, that these two cases stem from arrests out of the same incident. Haworth was the driver, and Cowen was the passenger in a vehicle that was later determined by the district court to have been invalidly stopped. Both men challenged the introduction of certain evidence against them. The issue of standing to challenge the reasonableness of the stop is addressed in both opinions by the Supreme Court.

In *Cowen,* the Court stated:

> Cowen asserts that all evidence obtained as a result of the stopping of the car and the seizure of the defendant are fruits of an illegal search inadmissible as evidence and should have been suppressed under

*Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *We do not reach the question of whether the initial stopping of the automobile was in violation of the Constitution since, even assuming the illegality of such stop, Cowen is without standing to raise the question.*

*Cowen,* 104 Idaho at 650, 662 P.2d at 231 (emphasis added).

Less than one year later, in *Haworth,* the Court concluded:

"[S]topping an automobile and detaining its *occupants* constitute a 'seizure' within the meaning of [the fourth amendment], even though the purpose of the stop is limited and the resulting detention is quite brief." *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979) (emphasis added). The personal rights of both Cowan as passenger and Haworth as driver "to the possession and control of his own person, free from all restraint or interference from others," *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968), were infringed upon by the investigatory stop. *Therefore, both have standing to contest the reasonableness of the stop.*

*Haworth,* 106 Idaho at 406, 679 P.2d at 1124 (emphasis added).

Whereas it appears well settled that a passenger may not have standing to challenge the *search* of the vehicle once stopped, the passenger may have standing to challenge the *stop* itself. If the stop, or as in this case the continued detention, of the passenger is invalid, then the passenger is indirectly being given standing to challenge the *results* of the search and to request suppression of the evidence as the remedy. Though,

I readily admit and recognize the different constitutional principles involved—the difference between an unlawful detention of an individual and the limited expectation of privacy a passenger has in the vehicle in which he is traveling—the net effect to the state's case is the same in either case, i.e., suppression of the evidence obtained in the search.

As guidance to the district court, I believe the approach when dealing with a non-owner passenger should be as follows. First, the court must determine whether the stop was initially valid. If valid, the passenger has no standing to challenge the evidence based on the stop or any subsequent search. If not valid or if the stop later turns into an unlawfully continued detention, the passenger has standing to challenge the evidence taken during any subsequent search because of his standing to challenge the stop.

Therefore, without either the stop being invalid, or turning into an unlawful detention, the passenger is without standing to challenge the search of the vehicle. The issue for the passenger is his standing to challenge the stop and detention, not the search. I concur with the majority that pursuant to the Supreme Court's decision in *Haworth,* the passenger has standing to challenge the stop and detention and thereby can ultimately have the evidence suppressed, in spite of the fact that he would have no standing to challenge the search.