991 P.2d 375

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Benedi Friera PABILLORE, Defendant–Appellant.**

No. 24537.

Court of Appeals of Idaho.

Oct. 13, 1999.

Review Denied Jan. 12, 2000.

Alan E. Trimming, Ada County Public Defender; Paul R. Taber III, Deputy Public

Defender, Boise, for appellant. Paul R. Taber III argued.

Hon. Alan G. Lance, Attorney General; Kimberly A. Coster, Deputy Attorney General, Boise, for respondent. Kimberly A. Coster argued.

LANSING, Judge.

Benedi Friera Pabillore sought the suppression of evidence seized from a rental car that he was driving. Pabillore asserted that the stop and subsequent search of the vehicle were illegal. The district court denied Pabillore's motion, holding that the stop was justified and that, although the search of the vehicle's trunk was unlawful, Pabillore did not have standing to challenge that search. A jury later found Pabillore guilty of trafficking in methamphetamine, and this appeal followed. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

An informant's tip, received by Boise Police Detective Michael Harrington in December, 1996, indicated that Pabillore utilized rental cars as part of a drug trafficking operation in which he transported drugs from California to Idaho. The informant also said that Pabillore planned to rob a particular pizza restaurant on the evening of December 28. Detective Harrington surveilled Pabillore for two nights, during which he observed Pabillore driving a rented 1996 Ford Contour. On December 28, the date on which the tipster said the robbery was to occur, Harrington saw Pabillore enter the pizza restaurant, but no robbery took place. About a day later, the informant told Harrington that he had seen Pabillore loading clothes into the Ford Contour. In attempting surveillance thereafter, Harrington was unable to find the Contour or Pabillore and saw little or no activity at Pabillore's apartment. A week or two later, the detective contacted the manager of the apartment building where Pabillore lived and was told that Pabillore had disappeared, apparently abandoning the apartment.

The Ford Contour that Pabillore had been driving was subsequently reported stolen because it had not been returned to the car rental company at the end of the rental period. Pabillore had been listed as an authorized secondary driver on the rental agreement for the missing car. Detective Harrington learned of the theft report on January 15, 1997.

On February 4, 1997, Harrington received a telephone call from the apartment manager who said that Pabillore was in the apartment manager's office at the time of the phone call. Harrington immediately drove to the apartment building. Upon his arrival he saw Pabillore, with two passengers, driving away in another rental car, a 1997 Ford Escort. Harrington decided to stop Pabillore to question him about the reported theft of the 1996 Ford Contour. Harrington requested additional patrol units to assist in the stop because Pabillore had a history of violence and weapons charges. Once the additional police vehicles arrived, Harrington initiated a "high-risk" stop of the Ford Escort. The police ordered the three occupants out of the car, conducted pat down searches, and then placed them in patrol cars. In patting down one of the passengers, Glenn Nazareno (who was also the sole renter and the only authorized driver of the Ford Escort), the police found a glass pipe of a type used for taking drugs. Nazareno was then placed under arrest for the possession of drug paraphernalia.

After arresting Nazareno, the police searched the car, beginning with the trunk. Inside the trunk, they discovered approximately 170 grams of methamphetamine as well as chemicals that could be used in manufacturing illegal drugs. The search then progressed to the passenger compartment. Inside the passenger door storage area, the police found a small pill bottle that contained additional methamphetamine. Pabillore was arrested at the conclusion of the vehicle search and was charged with trafficking in methamphetamine, Idaho Code § 37–2732B(a)(3), possession of a controlled substance, I.C. § 37–2732(c), and possession of drug paraphernalia, I.C. § 37–2734A. Nazareno also was charged with these and other crimes.

Pabillore and Nazareno moved to suppress the evidence found in the automobile. At the motion hearing, the defendants argued that the vehicle stop had been initiated without reasonable suspicion of any criminal activity and that the officers could not lawfully search the vehicle incident to Nazareno's arrest. The district court upheld the stop, and held the search of the passenger compartment to be lawful as a search incident to Nazareno's arrest. The court granted Nazareno's motion to suppress the evidence found in the trunk, however, concluding that the officers were not entitled to search the trunk because a warrantless search of an automobile incident to an occupant's arrest must be limited to the passenger compartment.[1] *See New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Homolka,* 131 Idaho 172, 953 P.2d 612 (1998). The district court nonetheless denied Pabillore's suppression motion in its entirety because the court concluded that Pabillore, who was neither the renter of the vehicle nor an authorized secondary driver under the rental agreement, did not have standing to complain of the search.

A trial was conducted, and Pabillore was found guilty of the charged offenses. On appeal, he argues that the district court erred in denying his suppression motion. He contends there was no reasonable suspicion to justify the stop of the vehicle he was driving and that, as an occupant of the car who was detained during the search, he had standing to contest the search of the car's trunk.

## II.

## ANALYSIS

### A. Reasonable Suspicion for the Stop

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The detention of an individual is a "seizure" and, to be lawful, must comport with Fourth Amendment standards. These standards allow a police officer to conduct a limited investigative detention of an individual if the officer has reasonable suspicion that the person is involved in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889, 911 (1968); *State v. DuValt,* 131 Idaho 550, 552–53, 961 P.2d 641, 643–44 (1998); *State v. Cook,* 106 Idaho 209, 677 P.2d 522 (Ct.App.1984). The officer's suspicion must be grounded on specific articulable facts and rational inferences that can be drawn therefrom. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 905; *State v. Gallegos,* 120 Idaho 894, 896–97, 821 P.2d 949, 951–52 (1991). In this assessment, a "totality of the circumstances" test is applied. *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *DuValt, supra; State v. Johns,* 112 Idaho 873, 877, 736 P.2d 1327, 1331 (1987). "Based upon the whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez,* 449 U.S. at 417, 101 S.Ct. at 695, 66 L.Ed.2d at 628.

■ Pabillore argues that the police officers did not have the requisite reasonable suspicion to stop him because the stop was based solely on an uncorroborated tip from an informant who was incorrect in predicting a pizza restaurant robbery. Pabillore also claims that the stop was unjustified because, had the officers further investigated the alleged theft of the rented Ford Contour, they would have learned that the car had been recovered a few weeks earlier.

We disagree with Pabillore's assessment. The informant had told Detective Harrington that Pabillore utilized rental cars as a mode of transporting narcotics from California to Idaho. The detective's subsequent observation of Pabillore driving a rental car lent some credence to this report. Pabillore's subsequent disappearance coincided with the disappearance of the rental car, for which he was an authorized driver under the rental agreement. When on January 15, 1997, Harrington learned that the same rental car had been reported stolen, the foregoing facts gave reasonable cause to suspect that Pabillore was involved in the car theft. Although the pizza parlor robbery did not occur as

1. This holding is not at issue in this appeal.

predicted by the informant, that did not so discredit the informant that the police were required to ignore other information from the same source. Even without the informant's tip, the information that Pabillore was listed as an authorized driver on the vehicle rental agreement and had been seen driving the vehicle shortly before it was reported stolen would give sufficient grounds for an investigative stop.

Pabillore suggests that the stop should be invalidated because, if Harrington had checked on the status of the theft report before stopping Pabillore, he would have learned that the stolen car had been recovered in California and returned to the rental company. We fail to see how this information, if it had been known to Harrington, would have destroyed the justification for the stop. The missing car had not been returned to the rental company by Pabillore or by the person who rented it; it had been abandoned at a hotel parking lot in California. It was discovered by police in that state and was returned to the company that owned it. The recovery of the automobile did not mean that a theft had not occurred and did not terminate the need for an investigation of that reported crime.

## B. Standing to Challenge Search of the Automobile Trunk

We next consider Pabillore's argument that the district court erred in holding that Pabillore lacked standing to challenge the legality of the officers' search of the automobile trunk. The district court based its decision upon the well-established principle that suppression of evidence for an unconstitutional search may be obtained only by one whose rights were infringed, i.e., by one who had a reasonable expectation of privacy in the place or thing that was searched. *See United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Vasquez,* 129 Idaho 129, 131, 922 P.2d 426, 428 (Ct.App. 1996). The district court determined that one driving or occupying a rental vehicle, who is neither the renter nor an authorized driver under the rental agreement, has no reasonable expectation of privacy in the vehicle and, hence, lacks standing to complain of the vehicle's subjection to a search. This proposition is supported by numerous authorities. *See, e.g., United States v. Riazco,* 91 F.3d 752, 754–55 (5th Cir.1996); *United States v. Jones,* 44 F.3d 860, 871 (10th Cir. 1995); *United States v. Wellons,* 32 F.3d 117, 119 (4th Cir.1994); *United States v. Roper,* 918 F.2d 885, 887–88 (10th Cir.1990).

Pabillore does not take issue with the district court's holding that he had no privacy interest in the vehicle. Rather, he contends that evidence found in the vehicle search should be suppressed in his case because the search was the product of an unlawful prolongation of Pabillore's detention. According to Pabillore, even if the initial stop of the vehicle was lawful because it was supported by reasonable suspicion, his continued detention thereafter became unlawful because the detention was unreasonably extended while the officers conducted the vehicle search. Thus, he argues, evidence found in the trunk must be suppressed because it is the fruit of his unlawful detention.

In support of his argument, Pabillore relies upon our decision in *State v. Luna,* 126 Idaho 235, 880 P.2d 265 (Ct.App.1994). In that case, an officer stopped an automobile with four occupants on suspicion that the driver was intoxicated. After satisfying himself that the driver was neither intoxicated nor wanted on any outstanding warrants, the officer did not allow the driver to leave. Instead, he continued to converse with the driver, who had been placed in the patrol car, while another officer kept watch on the detained vehicle and its passengers. Eventually, at the officer's request, the driver consented to a search of the vehicle although the officer had no articulable basis for a search. This Court held that Luna, a passenger, had standing to seek suppression of cocaine found in the car even though he had no reasonable expectation of privacy in the vehicle. We reasoned that the evidence had been gained as the result of an investigative stop which became unreasonable when the officer continued to detain the driver and passengers after the suspicion that justified the stop had been dispelled. Thus, *Luna* recognizes that

an automobile passenger, who has no privacy rights in the vehicle, may challenge its search if the search is a product of an initially lawful detention of the passenger that has become unreasonably protracted. *See also State v. Reed,* 129 Idaho 503, 505, 927 P.2d 893, 895 (Ct.App.1996) ("A legitimate detention, if unreasonably prolonged after the justification for the detention has dissipated, may become an unreasonable seizure which is objectionable under the Fourth Amendment").

■ Factors to be considered in assessing whether an investigative detention was so protracted as to become an unreasonable seizure include its duration, the law enforcement purposes served, and the diligence with which the police pursued their investigation. *See United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605, 614 (1985); *United States v. Place,* 462 U.S. 696, 709, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110, 122 (1983). In *Sharpe,* the United States Supreme Court explained:

> Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But our cases impose no rigid time limitation on Terry stops. While it is clear that "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion," we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes.
>
> . . . .
>
> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.

470 U.S. at 685–86, 105 S.Ct. at 1574–75, 84 L.Ed.2d at 614–15 (citations omitted).

We conclude that the investigative stop here did not develop into an unreasonable detention of Pabillore. We have held that the police had a legitimate reason to initiate the traffic stop of Pabillore—the investigation of a reported car theft. Because the police had information that Pabillore had a history of violence and might be armed, they undertook a "high risk" stop of the vehicle, which included a pat-down search of the other occupants to make sure that none of them were armed.[2] Circumstances then developed that caused the legitimate investigative purpose of the detention to extend beyond inquiries about the alleged car theft, for the officers found drug paraphernalia on Nazareno. This discovery expanded their investigative focus to encompass possible drug-related offenses. The questioning of Pabillore was deferred while the officers tended to the search of the vehicle incident to Nazareno's arrest. This extension of Pabillore's detention was not of long duration, however; Detective Harrington testified that the detention of the occupants and the search of the vehicle lasted only ten to fifteen minutes before the vehicle was towed and the occupants were taken to a nearby police station. Admittedly, that period included a few minutes during which officers conducted a search of the vehicle trunk that was later held to have been unlawful, but that search, *per se,* was not violative of Pabillore's Fourth Amendment rights, and any associated prolongation of his detention was minimal.

This case is readily distinguishable from *Luna,* for here the suspicion that justified the initial stop was never dispelled. To the contrary, during the course of the detention a suspicion of further criminal activity developed which also required investigation. Under these circumstances, the *Terry* stop did not ripen into an unreasonable detention of Pabillore and, therefore, evidence found in

---

**2.** Pabillore has not challenged the police use of the "high risk" procedure in his appeal to this Court.

the automobile search is not suppressible as the fruit of an unlawful detention.

## CONCLUSION

The stop of the vehicle driven by Pabillore was supported by reasonable suspicion that Pabillore may have been involved in an automobile theft. His continued detention thereafter, while the officers did a pat down search of the other occupants and searched the vehicle, was not unreasonable. Accordingly, Pabillore's motion to suppress evidence found in the automobile was correctly rejected by the district court. The district's order denying the motion to suppress is affirmed.

Chief Judge PERRY and Judge Pro Tem R.B. WOOD, concur.