**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46612**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | )   **Opinion Filed: April 30, 2020** |
|     **Plaintiff-Respondent,** | ) |
| | )   **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) |
| SHARRON AMANDA BILLS, | ) |
| | ) |
|     **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Order denying motion to suppress, <u>reversed</u>; judgment of conviction, <u>vacated</u>; and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Sharron Amanda Bills appeals from the judgment of conviction entered upon her conditional guilty plea to trafficking in heroin, possession of methamphetamine, and possession of drug paraphernalia. Bills argues the district court erred when it denied her motion to suppress the statements she made when confronted with evidence illegally obtained from her person. Because those statements were inadmissible, the district court erred when it denied Bills' motion to suppress. We therefore reverse the district court's order, vacate the judgment of conviction, and remand this case for further proceedings consistent with this opinion.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers received a tip that drug trafficking was occurring at the address at which Bills resided. Officers surveilled the residence and pulled items from the garbage receptacles that

revealed indicia of drug use and tested presumptively positive for heroin. Based on what they discovered, officers obtained a search warrant for Bills' home, vehicles, and curtilage.

While officers executed the warrant, Bills was handcuffed in a hallway of the house and then taken outside. An officer observed a small bulge in the front right pelvic area of Bills' pants. The officer asked Bills if she had anything on her person that could cut, stick, or poke the officer or make her bleed. Bills said no. The officer then conducted a search for weapons, during which the officer felt the bulging area and determined it was a cylinder approximately two inches long and one inch wide. Bills was asked what the object was and, when she did not immediately respond, the officer reached into Bills' pant pocket and retrieved the object--a clear cylindrical tube that contained a substance that appeared to be heroin. The tube also contained a small bag of what appeared to be methamphetamine.

A second officer read Bills her *Miranda*[1] rights. The officer informed Bills she was being detained and asked Bills questions relating to the house that was being searched. The officer also questioned Bills about what was in the container found on her person. Bills responded that the substance was "black," which is a slang term for heroin. Bills also explained the white powdery substance might be bath salts.

The State charged Bills with: felony trafficking in heroin, Idaho Code § 37-2732B(a)(6)(B); felony possession of methamphetamine, I.C. § 37-2732(c)(1); and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A.[2] The State also added a persistent violator charge, I.C. § 19-2514. Bills filed a motion to suppress and argued the search of her person was unlawful because the officer did not have reason to believe Bills was armed or presently dangerous. Bills also claimed any statements derived from the unlawful search should be suppressed. After a hearing, the motion to suppress was denied in part and granted in part. The district court found that the officer did not possess reasonable suspicion that Bills was armed and dangerous so as to justify a search. Nonetheless, the district court held that the drugs found on Bills were admissible under the inevitable discovery doctrine because Bills would have been

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] All persons at the scene of the crime were charged with frequenting a place where drugs are being used, Idaho Code § 37-2732D. The affidavit in support of the complaint against Bills listed the following charges: frequenting, trafficking heroin, possession of methamphetamine, and possession of paraphernalia. The first criminal complaint listed only two charges: possession of heroin and possession of methamphetamine.

searched incident to her arrest, and thus, it was inevitable the officers would have discovered the clear cylinder and the contents of the cylinder. In addition, the district court found that the statements Bills made to the officers after she was handcuffed but before she was advised of her *Miranda* rights should be suppressed, but any statements made after reading the *Miranda* rights were admissible.

Bills entered a conditional guilty plea, and reserved her right to appeal the district court's denial of her motion to suppress. For the trafficking charge, the district court imposed a unified sentence of twenty-two years, with twelve years determinate, and for the possession of methamphetamine charge, the district court imposed a determinate seven-year sentence. As for the paraphernalia charge, Bills was sentenced to 365 days with credit for time served. Bills timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Bills argues the district court erred in denying her motion to suppress. Specifically, Bills contends the exclusionary rule requires suppression of the statements she made when responding to the officer's question about evidence seized from Bills' pants. The State responds the district court properly relied upon the inevitable discovery doctrine as a basis to admit the statements.

On appeal, the State concedes the search was unlawful, and Bills concedes the drugs found on her person were admissible under the inevitable discovery doctrine. However, unlike the agreement regarding the unlawful search of Bills and the inevitable discovery of drugs found on her, the parties do not agree regarding the admissibility of the statements made by Bills when

she was confronted with the drugs. According to Bills, the district court should have suppressed the statements she made to the officer when confronted with the drugs found on her person based on the holding in *State v. Luna*, 126 Idaho 235, 880 P.2d 265 (Ct. App. 1994). The State disagrees and argues that unlike in *Luna*, the statements in this case would have inevitably been made and concerned evidence that was ultimately admissible.

In *Luna*, the defendant was sitting in the front passenger seat of a vehicle which was traveling below the speed limit and crossing the center-line. *Id.* at 236, 880 P.2d at 266. An officer suspected the driver was under the influence of alcohol, so a traffic stop was conducted. *Id.* The driver passed the field sobriety tests and had no outstanding warrants; nonetheless, the officer prolonged the traffic stop until the driver eventually consented to a search of his vehicle. *Id.* The vehicle search uncovered a kilogram of cocaine in the back seat, and all the occupants of the vehicle--including Luna--were arrested. *Id.* Luna was asked about the cocaine during the booking process, and he explained the driver of the vehicle paid cash for the drugs in Las Vegas. *Id.*

Luna moved to suppress the incriminating statement he made to the officer while in custody at the police station. *Id.* The district court denied Luna's motion, in part, because Luna had not invoked his right to remain silent. *Id.* This Court reversed the district court and held the inquiry by the officer at the police station, referring to the cocaine found in the vehicle, was "fruit of the poisonous tree." *Id.* at 239, 880 P.2d at 269. This Court explained: "Statements made by the defendant as a result of being confronted by the police with the fruits of an illegal search constitute the fruit of the poisonous tree and are inadmissible in evidence in a criminal prosecution." *Id.* There is an exception where the incriminating statement was a product of the defendant's free will and intervening events broke the causal chain between the illegal police conduct and the defendant's statement. *Id.* In *Luna*, that exception did not apply. *Id.* There, because the incriminating statement was derived directly as a result of the unlawful seizure of the cocaine, this Court held the statement should have been suppressed. *Id.*

*Luna* applies to this case. Like in *Luna*, the officer in the present case conducted an unlawful search which revealed illegal drugs. Just as Luna was arrested, taken to jail, and then asked about cocaine from the vehicle, Bills was similarly detained and read her *Miranda* rights, and then confronted with the drugs that were seized as a result of the unlawful search. Bills, like Luna, made incriminating statements regarding the drugs she sought to suppress. Pursuant to the

4

holding in *Luna*, these statements made by Bills, which were the result of being confronted by police with evidence from an illegal search, are inadmissible since they are fruit of the poisonous tree.

The district court held, and the State argues on appeal, that *Luna* does not apply because Luna was confronted with inadmissible evidence, whereas Bills was confronted with evidence that was admissible. We disagree. The inevitable discovery doctrine is an exception to the fruit of the poisonous tree doctrine suppressing the evidence; it is not an exception to an illegal search. There are two pieces of evidence that flow from the illegal search in this case: the physical evidence and the statements. Each piece of evidence must have an independent basis for admissibility. The physical evidence is admissible only because of the inevitable discovery exception to the fruit of the poisonous tree doctrine.

Whether the statements are admissible is an independent inquiry unrelated to whether there is an exception that permits the physical evidence to be admitted. In other words, for each piece of evidence, there must be an exception to the fruit of the poisonous tree doctrine to render the evidence admissible. Simply because the physical evidence is ultimately admissible does not mean the statements are also admissible; the admissibility of the physical evidence does not "cure" the illegal search such that the statements are washed clean of the initial taint. Thus, there must be an exception to the fruit of the poisonous tree doctrine to render the otherwise inadmissible statements admissible.

The State argues Bills would have inevitably made the statements. According to the State, had Bills been lawfully searched incident to the arrest, she would have made the same statements when confronted with the evidence. We disagree. Statements are inherently different than physical evidence which, by its nature, a defendant cannot change or ignore. Conversely, a defendant, after given time to reflect upon her circumstances, may not make the same statements and may not make any statements at all. The State does not point to any evidence in the record to indicate Bills would have spoken and given the same answers absent the initial illegality. This Court will not speculate as to if and to what extent Bills would have made the same statements; the burden is on the State to demonstrate the exception applicable to the fruit of the poisonous tree doctrine, and the State has failed to do so in this case.

In addition to her reliance on *Luna*, Bills argues her statements made to the officer when confronted with the drugs should also be suppressed under the holding in *State v. Downing*, 163

5

Idaho 26, 407 P.3d 1285 (2017). In *Downing*, the defendant was located in a probationer's home when parole officers conducted a residence verification and searched the house. *Id.* at 28, 407 P.3d at 1287. There was visible drug paraphernalia in the garage, and Downing admitted to smoking methamphetamine there. *Id.* Downing was read his *Miranda* rights, and an officer proceeded to perform a pat-down search of Downing, which revealed methamphetamine. *Id.* at 29, 407 P.3d at 1288. Shortly thereafter, an officer asked Downing about the drugs found in his pocket and Downing explained he had smoked methamphetamine, but then placed the bag in his pocket when the officers arrived. *Id.*

The Idaho Supreme Court held first that the pat-down search of Downing was unreasonable. *Id.* at 30, 407 P.3d at 1289. Next, the Court held that Downing's admissions about drug use in the house flowed directly from the illegal search, with no intervening factors; thus, Downing's admissions once confronted with the drugs in his pocket should have been suppressed. *Id.* at 31, 407 P.3d at 1290. Finally, the Court was not persuaded that Downing's presence in the house or admission that he used drugs that day meant it was inevitable that the officers would discover the methamphetamine in Downing's pocket. *Id.* at 31-32, 407 P.3d at 1290-91.

Like in *Downing*, the search of Bills was illegal and Bills made comments about the drugs when confronted by the officer with the fruits of the illegal search. Because the Court in *Downing* ruled that Downing's "admissions once confronted with the drugs in his pocket should have been suppressed," we must reach the same conclusion in the present case. *Id.* at 31, 407 P.3d at 1290. Furthermore, the State does not contest Bills' interpretation of *Downing* and provides no argument as to why *Downing* is distinguishable from this case. Therefore, under the holding in *Downing*, the statements made by Bills when confronted with drugs in her pocket should have been suppressed.

Pursuant to *Luna* and *Downing*, the district court erred when it failed to suppress the statements made by Bills when she was confronted with the drugs found on her person, which were the fruits of an illegal search. We therefore reverse the district court's denial of Bills' motion to suppress.

## IV.

## CONCLUSION

The denial of Bills' motion to suppress is reversed, the judgment of conviction is vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.